UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joshua Anthony Jones,<br><br>   Petitioner,<br><br>v.<br><br>Tom Roy,<br><br>   Respondent. | Case No. 16-cv-3696 (JNE/HB)<br><br>**REPORT AND RECOMMENDATION** |

Joshua Anthony Jones, MCF-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082, pro se

James B. Early and Matthew Frank, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, and Linda Kay Jenny, Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, MN 55487, for Tom Roy

HILDY BOWBEER, United States Magistrate Judge

  This matter is before the Court on Respondent Tom Roy's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. No. 11]. Petitioner Joshua Anthony Jones is incarcerated at the Minnesota Correctional Facility in Oak Park Heights, Minnesota, and filed his habeas petition pursuant to 28 U.S.C. § 2254. (Pet. [Doc. No. 1].) The motion to dismiss has been referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. For the reasons set forth below, the Court recommends that the motion to dismiss be granted and the Petition be dismissed.

## I.     Procedural Background

On November 1, 2010, Petitioner was convicted of "two counts of aiding and abetting second-degree assault, two counts of aiding and abetting second-degree assault for the benefit of a gang, prohibited person in possession of a firearm, and prohibited person in possession of a firearm for the benefit of a gang." *State v. Jones*, A11-0434, 2012 WL 1069880, at *1 (Minn. Ct. App. Apr. 2, 2012).  On April 2, 2012, the Minnesota Court of Appeals affirmed Petitioner's conviction, but remanded the case to the district court for resentencing because the district court imposed a sentence with both an excessive duration and an improper prohibition preventing Petitioner from seeking supervised release. *Id.* at *7.  The Government had conceded the sentencing errors. *Id.* Petitioner's request for certiorari was denied on June 27, 2012, and judgment was entered on June 28, 2012.  (Resp't's App. at 2[1] (Minnesota Appellate Courts Case Management System for Case Number A11-0434) [Doc. No. 14].)

On October 29, 2012, Petitioner was resentenced to seventy-two months. (Resp't's App. at 18 (Minnesota Appellate Courts Case Management System for Case Number A11-0434).)  No appeal was taken from the resentencing.

On July 20, 2015, 994 days after Petitioner received his amended sentence, Petitioner filed a motion for post-conviction relief in Hennepin County District Court, asserting he was entitled to post-conviction relief because (a) there was new evidence that discredited a MySpace profile page introduced into evidence at trial and (b) the jury had

---

[1]  The Court cites to the CM/ECF page numbers, not the page numbers assigned by the Respondent.

2

been improperly instructed at trial.  (Pet. at 3.[2])  The District Court denied the relief on November 16, 2015.  (*Id.*)

Petitioner filed the instant petition in federal court on October 27, 2016, asserting two grounds in support of his request for habeas corpus relief.  His first ground ("Ground One") is that, at the time of the trial, he was not advised how to contest and/or discredit testimony regarding a MySpace Profile Page that he alleges was "very prejudicial to [his] case."  (Pet. at 5.)  Petitioner claims he has "since learned that there is subsequent forensic technology available to contest the legitimacy of that evidence."  (*Id.*)  Petitioner's second ground ("Ground Two") is that his conviction for second degree assault should be overturned because he was unable to confront the alleged victim, in violation of the "ten point criteria for forfeiting confrontation."  (*Id.* at 6.)

On November 29, 2016, this Court issued an order stating that Respondent may file a motion to dismiss in lieu of a more complete answer if Respondent believes that Petitioner's grounds for relief are barred by the statute of limitations or procedurally defaulted [Doc. No. 7].  The Order observed that the dates set forth in the Petition raised a concern about the timeliness of the action, specifically whether the petition was filed within the one-year limitations period of 28 U.S.C. § 2244(d)(1).  (*Id.*)

Respondent filed a motion to dismiss on February 9, 2017, asserting Petitioner's claims are time-barred under 28 U.S.C. § 2244(d)(1) [Doc. No. 11].  Respondent points out that more than one year passed between October 29, 2012, the date Petitioner's

---

[2]  The Court uses ECF page numbers in citing to the petition.

3

sentencing became final, and July 20, 2015, the date Petitioner filed his petition for post-conviction relief.  (Resp't's Mem. Supp. Mot. Dismiss at 5 [Doc. No. 12].)

Petitioner filed a response in opposition to the motion to dismiss on March 9, 2017 [Doc. Nos. 16-17].  Petitioner argues his claims are not time-barred under 28 U.S.C. § 2244(d)(1)(A) because his petition for post-conviction relief was not denied until November 6, 2015, giving him until February 6, 2017 (the one-year statute of limitations period plus ninety days to appeal his motion in state court) to file his Petition.  (Pet.'s Mem. Opp'n Mot. Dismiss at 2 [Doc. No. 17].)  Petitioner does not address the 994-day delay between his sentencing and the filing of his petition for post-conviction relief. Petitioner further contends that his claims are not time-barred under 28 U.S.C. § 2244(d)(1)(D) because he did not previously have the "technical expertise" necessary to challenge the authenticity of the MySpace page.  (*Id.*)

Alternatively, Petitioner argues the guidelines for equitable tolling set forth in *Holland v. Florida*, 560 U.S. 631, 647 (2010) apply to his case.  (Pet. at 2-3.)  Petitioner states he was pursuing his rights the entirety of the time he seeks to have tolled and he was prevented from filing his habeas petition because of the "extraordinary circumstance" of being unable to adequately challenge the authenticity of the MySpace page.  (*Id.*)

Respondent did not file a reply to Petitioner's response.

## II.     The MySpace Profile Page

Because the use of the MySpace Profile Page at trial appears to be the common theme underlying Petitioner's asserted grounds for habeas relief, some additional background on the role it played in the prosecution of Petitioner would be helpful.

At trial, a prior recorded statement made by G.O. was admitted into evidence even though G.O. did not take the stand. (Resp't's App. at 41-46, 49-50[3] (State's Brief and App.) [Doc. No. 14].) At a hearing outside the presence of the jury, the prosecution argued the statement should be admitted under the "forfeiture by wrongdoing" exception to the Confrontation Clause, and introduced evidence that G.O. had failed to appear to testify at trial notwithstanding diligent efforts to secure his appearance, and that threats had been made against anyone who might testify at Petitioner's trial. (*Id.*)  Specifically, a state investigator who was an expert on gang activity testified about the "code of silence" to which Petitioner's gang adhered, which prescribed punishment ranging from fines to physical harm or even death against anyone who testified against a gang member. (*Id.* at 43-44.)  In addition, the investigator testified he had located online a MySpace page belonging to Eddie Lopez Villarubia, the leader of Petitioner's gang, and that the page contained a message threatening any person who might testify at Petitioner's trial. (*Id.* at 50, 69-70; Resp't's App. at 26 (Jones' Pro Se Supp. Brief) [Doc. No. 14].)  The

---

[3] The transcript of the hearing at which the trial court considered and ruled on the prosecution's motion to admit G.O.'s statement is not a part of the record before this Court, but the brief filed by the State of Minnesota in response to Petitioner's 2011 appeal cites the trial transcript, and quotes at length the court's oral summary of the testimony offered at the hearing and the reasons for its ruling.  The Court relies on that source and on Petitioner's own "Pro Se Supplemental Brief" and "Pro Se Supplemental Reply Brief" for its understanding of what transpired.

investigator testified he had experience using MySpace, that he had found the threat on Villarubia's public MySpace page, and that because G.O. was MySpace friends with Villarubia, G.O presumably saw the online threats. (Resp't's App. at 26 (Jones' Pro Se Supp. Brief); Resp't's App. at 44, 50, 69-71 (State's Brief and App.).) The trial judge concluded the prosecution had met its burden of establishing that Petitioner forfeited his right to confront G.O. at trial, finding that Petitioner was a member of the gang and subscribed to its code of silence, and that "'[t]he State has proved by a preponderance of the evidence that it is the Native Mob's code of silence that has procured this witness's unavailability.'" (Resp't's App. at 46-47, 50-52 (State's Brief and App.).) Thus, the judge allowed portions of the prior statement of G.O. to be introduced at trial. (*Id.*) The MySpace page, however, was discussed only at the hearing and was not used in front of the jury. (*Id.* at 69; *see also* Resp't's App. at 176 (Order Denying Motion for Post-Conviction Relief, filed Nov. 5, 2015) [Doc. No. 14].)

Reading the Petition liberally, and taking into account arguments Petitioner has previously made to in order to make sense of his arguments here, Petitioner contends that the trial court relied on the MySpace page as justification for admitting G.O.'s prior statement into evidence without thoroughly vetting the page's authenticity. (Resp't's App. at 24-27 (Jones' Pro Se Supp. Brief); Resp't's App. at 114-17 (Jones' Pro Se Supp. Reply Brief) [Doc. No. 14].) Thus, he urges, the introduction of the MySpace page led directly to a denial of his Sixth Amendment right to confront and cross-examine G.O. at trial, and he contends he only recently became aware of the means to challenge the authenticity of the page.

6

### III. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The one-year period of limitations begins on the latest of four possible events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The statute of limitations is tolled while a state post-conviction motion is pending. 28 U.S.C. § 2244(d)(2).

Respondent contends that neither of Petitioner's grounds for relief is timely under § 2244(d)(1). Each of the grounds asserted in Petitioner's petition potentially arose at a different stage of the state court proceedings, and different rules apply to each claim. Therefore, the Court will consider each ground separately. *See Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012) ("AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis.").

7

### A. Ground One: Availability of New Technology to Contest Testimony Concerning the "My Space" Page

Petitioner asserts there is new technology available that "was not available previously" (Pet.'s Mem. Opp'n Mot. Dismiss at 2 [Doc. No. 17]) to contest the legitimacy of the MySpace page used at the hearing in support of the prosecution's request to introduce the prior recorded statement of G.O. under the "forfeiture by wrongdoing" exception to the Confrontation Clause. To calculate the one-year limitations period for this claim, the Court must first determine when the limitations period commenced. Respondent contends that the period of limitation commenced running on October 29, 2012, the date of resentencing, when sentencing became final, and would have thus expired on October 29, 2013. (Resp't's Mem. Supp. Mot. Dismiss at 5.) Petitioner disagrees, claiming that the period of limitation started to run on November 6, 2015, the date on which his motion for post-conviction relief was denied.

Section 2244(d)(1) contains "multiple provisions relating to the events that trigger its running." *Holland v. Florida*, 560 U.S. 631, 647 (2010) (emphasis omitted). Two of the four events listed in § 2244(d)(1) are potentially relevant to determining when the one-year clock began running for Ground One: (1) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," and (2) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A), (D). The clock began running on the latest of these two events. 28 U.S.C. § 2244(d)(1).

8

1. **Section 2244(d)(1)(A)**

Typically, the statute of limitations on a petitioner's claim(s) begins running on the date his or her judgment becomes "final by the conclusion of direct review or the expiration of such review." *Id*. Direct review of Petitioner's appeals concluded on June 27, 2012, when the Minnesota Supreme Court denied his petition for discretionary review. Petitioner then had ninety days in which to file a petition for certiorari review with the United States Supreme Court; this ninety day period concluded on September 25, 2012. However, Courts have interpreted the "final judgment" in 28 U.S.C. § 2244(d)(1)(A) to encompass *both* conviction *and* sentencing. *Burton v. Stewart*, 127 S. Ct. 793, 798-99 (2007); *Ferreira v. Secretary, Dept. of Corrections*, 494 F.3d 1286, 1292-93 (11th Cir. 2007). Thus, the period of limitation for Petitioner's claim started to run on October 29, 2012, and expired on October 29, 2013. While the Court recognizes that Petitioner filed a state post-conviction motion which "tolled" the statute of limitations pursuant to § 2244(d)(2), such tolling is meaningless if the one-year statute of limitations expired before the state post-conviction motion was filed. *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001). Under § 2244(d)(1)(A), therefore, the Petition is not timely.

Petitioner asserts, however, that he did not discover the factual predicate for Ground One until summer 2015, when he filed his motion for post-conviction relief in Hennepin County District Court. Therefore, the Court will consider whether § 2244(d)(1)(D) provides a later accrual date.

9

### 2. Section 2244(d)(1)(D)

Petitioner does not describe the new technology he claims is now available to challenge the authenticity of the MySpace page, nor does he specify the date on which he discovered its existence. However, he filed his motion for post-conviction relief asserting the discovery of this new technology on July 20, 2015, along with an affidavit filed on the same day. (Resp't's App. at 18-19 (Minnesota Appellate Courts Case Management System for Case Number A11-0434).) Thus, the discovery could have been no later than July 20, 2015. If in fact it was new evidence the discovery of which qualified as a triggering event under § 2244(d)(1)(D), the filing of Petitioner's post-conviction motion on July 20, 2015, stopped the clock for this claim until November 6, 2015, when the clock commenced running again, and Petitioner's claim would arguably be timely.

But the Court concludes Ground One is time-barred under § 2244(d)(1)(D) because he raised virtually the same argument in 2012. The factual predicate of a claim for purposes of § 2244(d)(1)(D) comprises the "vital facts underlying those claims." *Martin v. Fayram*, 849 F.3d 691, 696 (8th Cir. 2017) (quoting *Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009)). Here, the vital facts underlying Petitioner's claim were known to him before the conclusion of his direct appeal. In fact, Petitioner raised his concerns about the authenticity of the MySpace profile page in April 2012, when he filed his pro se brief to the Minnesota Court of Appeals. *Jones*, 2012 WL 1069880 at *8; (*see also* Resp't's App. at 172-74 (Order Denying Motion for Post-Conviction Relief, filed Nov. 5, 2015)) (rejecting Petitioner's claim regarding "newly discovered evidence" vis-a-vis the MySpace page, noting that Petitioner had raised the issue at the Minnesota Court of

10

Appeals, and that Petitioner had "discuss[ed] in detail how to obtain authentication" of MySpace evidence in his briefing to the Minnesota Court of Appeals). Granted, Petitioner now argues he has discovered a new way to challenge the authenticity of the evidence, and that this discovery should have restarted the statutory clock under § 2244(d)(1)(D). (Pet.'s Mem. Opp'n Mot. Dismiss at 2.) He appears to argue that, in contrast to his 2012 appeal in which he only contested whether the prosecution had adequately authenticated the page, his newly discovered technology would allow Petitioner himself to challenge the authenticity of the page. But Petitioner indisputably harbored doubts about, and made arguments challenging, the authenticity of the evidence three years *before* he filed his post-conviction motion. And even assuming his attempted distinction between whether the prosecution adequately authenticated it and whether he has newly discovered means to actively challenge it made a difference for purposes of § 2244(d)(1)(D), Petitioner has identified no "technology" relating to discrediting the authenticity of the MySpace page that suddenly became available for the first time in the summer of 2015.[4] In sum, nothing in the Petition or Petitioner's response to Respondent's motion to dismiss supports the assertion that in the summer of 2015 he discovered "vital facts" that, with due diligence, he could not have discovered previously. Accordingly, Ground One is time-barred. Therefore, unless Petitioner can show that equitable tolling is warranted, the claim should be dismissed.

---

[4] In fact, Petitioner does not even state that application of this new technology has actually demonstrated the MySpace page was anything other than what it was represented to be. At most, he argues the new technology would give him the means to *try* to challenge the authenticity of the page, without any reason to believe the results of that attempt would support his position.

11

### 3. Equitable Tolling

Petitioner asserts that his claim should be deemed timely under the doctrine of equitable tolling. Equitable tolling is available to save an untimely habeas claim "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time" or when the respondent lulled the petitioner into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001) (quoting *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000)). Under the doctrine of equitable tolling, the AEDPA's statutory limitations period may be tolled if a petitioner can show that (1) he has been diligently pursuing his rights and (2) an extraordinary circumstance stood in his way. *White v. Dingle*, 616 F.3d 844, 847 (8th Cir. 2010).

Petitioner's grounds for his equitable tolling claim are essentially a repetition of his § 2244(d)(1)(D) arguments. He claims his continued efforts through the Minnesota appellate courts (presumably his 2012 appeal and his 2015 post-conviction petition) demonstrate that he was pursuing his rights throughout the time he seeks to have tolled, and that extraordinary circumstances stood in the way of filing his habeas petition sooner because he was unable to challenge adequately the authenticity of the MySpace page until recently when he discovered the availability of new forensic technology.

New evidence can constitute an extraordinary circumstance, and thus provide a way around a procedural bar to the consideration of the petitioner's claim, but only if the "the new facts raise sufficient doubt about [the petitioner's] guilt." *Schlup v. Delo*, 513 U.S. 298, 317 (1995). "To establish the requisite [doubt], the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light

12

of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id*. at 327.

Here, even if one accepts Petitioner's premise that new evidence – i.e., a new technological means of challenging the authenticity of the MySpace page – is now available to him that was not substantially available to him at trial, and even if one assumes for the sake of argument that the new technology would actually have succeeded in excluding the MySpace page, Petitioner fails to provide any basis to conclude that it is more likely than not that no reasonable juror would have convicted him. On the contrary, the connection between Petitioner's conviction and the MySpace page is extremely tenuous. The page was referred to in testimony considered by the trial judge at a hearing, held out of the presence of the jury, on whether the prior recorded statement of G.O., who was with Petitioner at the time of the shooting, could be admitted into evidence under the "forfeiture by wrongdoing" exception to the Confrontation Clause when G.O. failed to appear after being subpoenaed to testify at trial. In ruling the statement admissible, the judge did not even mention the MySpace page. (Resp't's App. at 41-46, 50-51 ( State's Brief and App.).) Furthermore, in rejecting Petitioner's challenge to his conviction based on the admission of the statement in alleged violation of his right to confront the witness, the Minnesota Court of Appeals held that "beyond a reasonable doubt the guilty verdicts were not attributable to [G.O.'s] statement." *State v. Jones*, 2012 WL 1069880 at *3. Thus, even if Petitioner could, with the assistance of the purported new technology, knock the MySpace page out altogether, the outcome here would have been the same. Accordingly, there is no basis for equitable tolling.

### B. Ground Two: State Court's Alleged Misapplication of State Law

Petitioner's second ground for relief is that he was improperly convicted and sentenced on second degree assault because he was unable to confront the alleged victim. Other than to say that he "does not believe the ten-point criteria for forfeiting confrontation was met," however, he does not offer any other explanation of this ground. (Pet. at 6-7.) To the extent it is based on the alleged newly discovered ability to challenge the MySpace page, the claim is untimely for the reasons discussed in connection with Ground One. To the extent it is based on something else, the Court notes that the Petition states this ground was raised on appeal. (*Id.*) Petitioner clearly knew the factual predicate underlying Ground Two at the time of trial. That is, Petitioner does not suggest his knowledge of the grounds for his convictions has changed since his appeal was denied. The claim is therefore untimely under § 2244(d)(1)(A) for the reasons discussed in Section III.A.1, *supra*. Similarly, for the reasons discussed in Section III.A.3, there is no basis for equitable tolling with respect to Ground Two.

### C. Certificate of Appealability

Before appealing a final ruling on a federal habeas petition, a state prisoner must be granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). The Court cannot grant such a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues

14

differently," or that the issues otherwise "deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994).

The Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than recommended here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. The Court therefore recommends that Petitioner not be granted a COA in this matter.

## IV.  Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondent Tom Roy's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. No. 11] be **GRANTED**;

2. Joshua Anthony Jones' Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DISMISSED**;

3. A certificate of appealability **NOT BE GRANTED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  July 11, 2017                    s/ *Hildy Bowbeer*
                                         HILDY BOWBEER
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.